DECISION
Defendant-appellant, Donnell M. McDonald, was indicted on one count of murder and one count of robbery. Following a jury trial, appellant was found not guilty of murder or robbery. Appellant was convicted, however, of the lesser included offenses of theft in violation of R.C. 2913.02, assault in violation of R.C. 2903.13(A), and involuntary manslaughter in violation of R.C. 2903.04(B).
The underlying facts of this case are essentially undisputed. At approximately midnight on November 30, 1999, appellant entered the Sports Club Lounge in Whitehall, where Casey Shelton was tending bar. In a videotaped statement, appellant admitted that he had been drinking and using drugs that night and that he went into the Sports Club Lounge to try to sell a gold chain to get some money. Appellant admitted that he and Shelton got into an argument and that appellant grabbed and hit Shelton in the forehead. According to appellant, Shelton fought back, flipped appellant onto the floor and ran outside. After Shelton left the bar, appellant threw the cash register onto the floor. The cash drawer opened, and appellant took three or four hundred dollars.
Whitehall Police Officer Louis Spezialetti testified that, while on routine patrol just after midnight, he saw Shelton on the sidewalk in front of the Sports Club Lounge. Shelton was waving, trying to get Spezialetti's attention. According to Spezialetti, Shelton seemed fatigued, out of breath and unsteady on his feet. Shelton told Spezialetti that he had been robbed. Shelton then collapsed. Despite the efforts of paramedics and the emergency department staff at Grant Hospital, Shelton never regained consciousness and died on December 6, 1999.
Deputy Coroner Dorothy E. Dean performed an autopsy on Shelton. She testified that, based on her examination of Shelton's lungs, she knew that Shelton suffered from "pretty bad asthma." She opined that Shelton died from lack of oxygen to the brain due to acute exacerbation of bronchial asthma.
Appellant now challenges his conviction for involuntary manslaughter and asserts the following assignment of error:
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION IN THAT THE STATE DID NOT PROVE BEYOND A REASONABLE DOUBT THAT THE DEATH OF CASEY SHELTON WAS THE PROXIMATE RESULT OF APPELLANT'S MISDEMEANOR ASSAULT ON HIM.
We agree that the evidence was insufficient to support appellant's conviction for involuntary manslaughter.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387, the Ohio Supreme Court held:
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
As an initial matter, we note that appellant's counsel did not move for judgment of acquittal on the involuntary manslaughter charge, pursuant to Crim.R. 29, at the close of evidence. Assuming, without deciding, that appellant's failure to move for a judgment of acquittal on the charge of involuntary manslaughter waives his right to argue on appeal that the evidence is insufficient to convict him of involuntary manslaughter, we nonetheless may consider the sufficiency of the evidence argument under the plain error doctrine.[1]
Under Crim.R. 52(B), we may address plain errors or defects affecting substantial rights, even though they were not timely brought to the attention of the trial court. Id.; State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "Plain error is found where, but for the error, the outcome of the trial would have been otherwise." State v. Franklin (1991), 62 Ohio St.3d 118, 128, certiorari denied (1992),504 U.S. 960. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, paragraph three of the syllabus. We conclude that appellant's conviction on the involuntary manslaughter charge amounts to plain error.
As defined in R.C. 2903.04(B), involuntary manslaughter is committed when another person dies "as a proximate result of the offender's committing or attempting to commit a misdemeanor." The trial court instructed the jury that it should find appellant guilty of involuntary manslaughter if appellant assaulted Shelton and Shelton died as a proximate result of the assault. The element of proximate cause in the manslaughter statute is satisfied when the state proves that the defendant set in motion "a sequence of events, the foreseeable consequences of which were known or should have been known to him at the time." State v. Chambers (1977), 53 Ohio App.2d 266, 272. "Generally, for a criminal defendant's conduct to be the proximate cause of a certain result, it must first be determined that the conduct was the cause in fact of the result, meaning that the result would not have occurred `but for' the conduct." State v. Lovelace (1999), 137 Ohio App.3d 206, 216. Criminal responsibility attaches only where the consequences of the defendant's conduct are direct, normal and reasonably inevitable when viewed in light of ordinary experience. State v. Losey (1985),23 Ohio App.3d 93, 95.
In the instant matter, the state failed to prove that appellant's assault on Shelton was the proximate cause of the victim's death. Although the state offered evidence that Shelton died of an asthma attack, the state did not provide evidence from which a reasonable trier of fact could conclude, beyond a reasonable doubt, that appellant's conduct caused the onset of the asthma attack.
As to the cause of death, the state elicited the following testimony from the deputy coroner:
 Q. Are you familiar with the disease of asthma, and are you familiar with the way it manifests itself on a person who is alive?
A. Somewhat, although I don't treat live people.
 Q. Okay. Do you know what kind of things can bring on an asthma attack?
A. Yes. I know some of them.
 Q. Okay. Would you tell us what types of things can bring on an asthma attack in a person who has it?
 A. Yes. Exercise can, cold air can, stress, emotional disturbances, or some allergies too. Those five things.
 If there are more, I don't know right off, because I don't treat live people.
 Q. These are the kind of things that can bring on an asthma attack?
A. Yes.
Q. Can an asthma attack lead to someone's death?
A. Oh, yes.
***
 Q. So, based on your training and experience, and based upon your examination of the body of Casey Shelton, can you tell us with a reasonable degree of medical certainty what caused Casey Shelton's death?
 A. Yes. Mr. Shelton had an asthma attack. That's what caused him to die. In medical terms, you'll see it's a hypoxis encephalopathy.
 That means not enough oxygen to the brain as a result of the exacerbation of acute asthma, as he had an asthma attack. That's what it means.
 Q. Exacerbation of acute asthma, just define a couple of the words for us?
When one exacerbates, what does one do?
A. Makes worse.
 Q. And acute asthma, what is that adjective? Tell us about his asthma.
 A. I think I meant exacerbation of bronchial asthma. That's what I meant to say.
 Acute exacerbation is what happened, right now, got worse. Bronchial asthma is a medical term for that disease; asthma. Bronchia asthma is the term for that disease.
 Q. Is that kind of exacerbation of acute bronchial asthma consistent with someone who is under a great deal of stress?
A. Yes.
 Q. Is that consistent with someone who is under a great deal of stress?
A. Yes.
 Q. The physical activity can do it also, can also cause it?
A. Yes.
 Q. So, I guess we're distinguishing two things. Physical activity can cause it. And stress, I guess we mean of a more emotional nature, can cause it?
A. Yes.
Q. And the combination of the two would only be worse?
A. Correct. [Tr. Vol. II, at 407-408, 410-412.]
Dr. Dean also testified that Shelton had some scabs over his right cheekbone, eyebrow, right knee, forearm and neck and several bruises on his scalp. She testified that the bruises could be consistent with being struck by a bottle or a hand or falling to the ground but none were the cause of death.
On cross-examination, the coroner testified that, on the night Shelton was admitted to the hospital, he had a blood alcohol content over .12 percent. Although she stated that she did not believe that the alcohol was a factor in Shelton's asthma attack, the coroner admitted that she did not know whether there is an association between alcohol consumption and asthma. She also admitted that there was no way that she could have predicted, in advance, whether Shelton would suffer from an attack of asthma on the day of the incident in the bar.
We conclude that the coroner's testimony the only evidence offered by the state on the issue of causation was insufficient to prove that Shelton's death was the proximate result of appellant's actions. Although the coroner testified that at least five different factors can provoke an attack of asthma, she did not give an opinion about which, if any, of the five factors might have caused Shelton's asthma attack. She did not give an opinion about whether appellant's actions were sufficient to provoke an attack of asthma or whether the timing of Shelton's symptoms made it more or less likely that appellant's conduct caused the attack of asthma. The coroner did not give an opinion about whether appellant's actions in fact caused Shelton's asthma attack.
Citing to Losey, at 97, the state argues that it was only required to provide evidence that appellant's conduct could have caused Shelton's asthma attack. Even assuming that the state is articulating the correct burden of proof, however, we conclude that the state failed to meet the burden.
In Losey, Mrs. Harper died from an acute coronary thrombosis after hearing a noise in her house at night and discovering, while in the company of her son, that the front door had been opened. There was no physical confrontation between the defendant and Mrs. Harper, and she was not the victim of any physical violence. The deputy coroner was asked a hypothetical question involving Mrs. Harper's medical history and the events surrounding the burglary, and gave his opinion that the acute coronary thrombosis was caused by the emotion of the evening.
In State v. Richards (Feb. 25, 1991), Clermont App. No. CA90-06-052, unreported, the defendant punched the victim in the face twice, he lapsed into unconsciousness and died. The state presented expert evidence that the victim died of a ruptured congenital aneurysm located in a blood vessel at the base of his brain, and that the jerking of the head produced by blows to the head could rupture an aneurysm causing death.
Contrary to the state's contention in this case, the coroner was not asked and did not testify that the facts surrounding the assault at issue could have triggered an asthma attack, nor did she opine that stress and/or physical activity could have caused Shelton's specific attack of asthma. In light of these shortcomings in the testimony, we conclude that there was insufficient evidence from which a reasonable trier of fact could conclude that Shelton's death was the proximate result of appellant's criminal conduct. We therefore conclude that the trial court committed plain error when it entered a judgment of conviction against appellant on the charge of involuntary manslaughter.
For the foregoing reasons, we sustain appellant's assignment of error and reverse appellant's conviction for involuntary manslaughter. This case is remanded to the Franklin County Court of Common Pleas for sentencing proceedings consistent with this decision.
 ____________________ BOWMAN, J.
BROWN and KENNEDY, JJ., concur.
[1] Although the issue of waiver was not raised in the briefs or at oral argument, this court gave the parties an opportunity to brief the issue. C. Miller Chevrolet v. Willoughby Hills (1974),38 Ohio St.2d 298.